Smith v. Keen.

## John B. Smith *versus* Hanover Keen.

An attachment of real estate upon a writ containing but one general count for money had and received, without any bill of particulars, was valid, if made prior to the St. 1838, c. 344. And that statute does not apply to attachments made before it was in force.

If judgment be rendered for an amount larger than the sum named in the *ad damnum* clause in the writ, it may be liable to be reversed in whole or in part for that cause, upon error brought by the party against whom it was rendered. It is, however, a valid judgment until reversed; and a stranger to it can neither sustain a writ of error, nor take advantage of the irregularity.

A levy on land is not invalid, merely because there was a clerical error in the recital of the amount of the judgment, where the true sum was apparent on an inspection of the whole execution. Such an error is amendable.

Where in making a levy upon land, before the Revised Statutes were in force, the officer returned that "the debtor within named, having been duly notified to choose an appraiser, but having neglected and refused to choose," he appointed one for the debtor; *it was held* by the Court, that the levy was not void for that cause.

And where there was a certificate upon the execution, signed by a justice of the peace, stating that he had administered the proper oath, which was set out in full, to the appraisers; and the appraisers referred to it in their return as "having been sworn as above;" and where the officer in his return, named the appraisers, and stated that he had caused them "to be chosen and sworn faithfully and impartially to appraise the estate above described;" *it was held* by the Court, that there was sufficient evidence that the appraisers had been legally sworn.

If an objection be first taken, at the trial, after the arguments had been concluded, and when the presiding Judge had finished his charge to the jury, it may for that cause be rightly overruled.

A judgment of a court, having by law jurisdiction of a cause, cannot be impeached collaterally, unless obtained fraudulently; but remains in force until reversed.

Where the demandant claims under a judgment and levy, and the tenant under a subsequent deed from the debtor, it is not competent for the tenant to show, that the judgment was recovered upon demands which were not justly due; that being a matter to be finally settled between the creditor and debtor.

Writ of entry. The case came before the Court on exceptions to the rulings and instructions and refusals to instruct of Tenney J. who presided at the trial.

The testimony at the trial was given in the exceptions, and copies of the writ, judgment, execution and levy in favor of John B. Smith against Benjamin Dillingham, were referred to as part of the case. The material facts are stated in the opinion of the Court; and the precise language of the material parts of the levy, to which objection was made, are given, unless it be the certificate of the justice, who administered the oath to the appraisers. This was made upon the back of the execution and immediately preceded the return of their doings by the appraisers. It was as follows : —

"Cumberland, ss. Nov. 14, 1840. Then personally appeared William Martin, John Smith and Edward T. Little, and made solemn oath, that they would faithfully and impartially appraise such real estate as should be shown to them to satisfy the within execution and all fees and charges.

"Thomas B. Little, Justice of the Peace."

The tenant objected to the recovery of the demandant, because there was no proof that the execution had been returned into the Clerk's office after the levy was made. This objection was not made until after the arguments had been concluded, and the Judge had finished his charge to the jury ; and it was overruled.

The execution had been produced from the clerk's office at the trial ; but no evidence had been offered, except what appeared from the production of the papers, that it had been returned into the clerk's office.

The exceptions, saving the omission of the formal part, concluded as follows : —

"The tenant contended, and requested the Court to instruct the jury, that said levy was invalid against the tenant, because there was a general count in said writ and no bill of particulars ; and because the alleged judgment offered was greater than the *ad damnum* in the said writ ; because the said execution did not correspond with said judgment, and did not appear to have been issued upon it, and said execution had not been returned as aforesaid ; because the said oath to the appraisers and said officer's return, as to notice to the debtor,

did not conform to law ; — but the Court declined to instruct the jury as requested in these several particulars.

" The tenant also contended, that the testimony in relation to said mortgage, and the consent of said heirs, and their deed, and the deed of said Ajalon, and the mortgage deed of said Benjamin shew that the tenant held under said Thomas and his heirs ; — but the Court ruled otherwise.

" The tenant further contended, and requested the Court to instruct the jury, that if nothing was due on said notes, when they were put in suit, and said John B. paid nothing for said notes, and knew there was nothing due on them when he consented to said suit in his name, and said suit was prosecuted for the benefit of said Joseph, the demandant could not recover in this action ; — but the Court declined to give said instructions, and did instruct the jury, that if said John B. took said notes, after they were over due, he could stand in no better situation than would the payee, if the suit had been in the name of the latter ; that it was not competent in this action to overhaul the judgment and go into the inquiry of what amount was really due, or whether any thing or not, unless that judgment was collusively obtained ; but if John B. recovered that judgment when nothing was due on the notes, and he or Joseph knew or had reason to believe, that nothing was due thereon, intending thereby to gain some advantage of the tenant or any other person, and Dillingham was willing to aid them to obtain such a judgment, the judgment would be void, and the demandant could not recover ; but if there were no such designs, the judgment was a sufficient foundation for the levy ; that if the tenant purchased the demanded premises after said attachment and before said judgment, and paid for them, and was ignorant of the existence of any such attachment until said levy, yet these facts alone would not prevent a recovery ; that if Dillingham omitted to notify the tenant of the existence of the attachment, after he knew it, it was a fact for the consideration of the jury on the question, whether he was guilty of collusion, as well as his neglecting to defend the suit ; but that the latter from inability would not necessarily prove collusion.

" The tenant requested the Court to instruct the jury, that the neglect of said Benjamin to notify the tenant of said attachment, after he found it out, and of the existence and pendency of said suit, was conclusive evidence of collusion on the part of said Benjamin; but the Court declined to give said instructions.

" A verdict was rendered for the demandant."

*Wells,* for the defendant, said that the tenant was in possession under a deed, and had a right to contest the title set up by the demandant in the same manner, at least, as an after attaching creditor. The levy was invalid to pass any title, for either of several reasons.

1. When the officer returned an attachment on the writ, there was but one general count, without the specification of any particular claim; and the return had no more force, than if it had been made upon a mere printed blank writ, with the clerk's name. The Statute of 1838, c. 344, § 1 and 4, is express, that under such circumstances the attachment can have no validity. Although the original suit was then pending, the statute applies to all cases, as well such as were commenced before, as well as after the statute was in force. The case, *Fairfield* v. *Baldwin,* 12 Pick. 388, was cited as in point, to sustain this objection.

The filing of the notes afterwards and obtaining judgment thereon, was the introduction of a new cause of action, and would have vacated the attachment, if it had ever been good. 1 Pick. 156, 192 and 204; 17 Mass. R. 591; 7 Greenl. 348.

2. The levy was invalid, because the creditor took judgment for an amount exceeding the *ad damnum* alleged in the writ. The judgment was clearly erroneous, and liable to be reversed on the application of a party to it, and may be treated as a nullity by a purchaser of the property. 16 Mass. R. 74; 1 South. 351.

3. The levy was invalid, because the execution by virtue of which it was made, did not issue upon any judgment shown to have been rendered between the parties. It does not correspond to that produced and relied upon. 8 Greenl. 207; 8 Mass. R. 79; 2 Conn. R. 464.

4. There is no sufficient evidence, that the debtor was duly

notified to choose an appraiser on his part. The officer should state what notice was given, that the Court may judge of its sufficiency. *Buck* v. *Hardy,* 6 Greenl. 162.

5. The legal evidence, that the appraisers were sworn, does not appear. The return of the officer merely says, that he caused them to be sworn. He does not state what oath was administered, and does not refer to any oath administered, whereby it could be made certain. St. 1821, c. 60, § 27 ; *Howard* v. *Turner,* 6 Greenl. 106 ; *Chamberlain* v. *Doty,* 18 Pick. 495.

6. The statute requires, that when an execution has been levied upon land, that it should be returned into the clerk's office. That this has been done, is not to be presumed, but is a fact to be proved. 3 Pick. 331 ; 5 Greenl. 197. These cases show, that the execution need not be returned at the return day, but recognize the necessity of its being returned, in order that the levy should be valid.

7. The tenant should have been permitted to show, that nothing was due from the debtor to the demandant at the time the original suit was brought. That judgment may be conclusive, until reversed, between the parties to it ; but third persons have a right to impeach it. *Downs* v. *Fuller,* 2 Metc. 135.

*Howard & Shepley,* for the demandant, proposed to notice the most plausible objections which had been made in behalf of the tenant.

The main question is, whether the judgment introduced in evidence was conclusive between these parties ? If the tenant has any pretence of claim it is under a deed from the same debtor, subsequent to the attachment of the demandant. The judgment is equally binding on parties and privies. 1 Stark. Ev. 295 ; 2 Salk. 674 ; *Adams* v. *Barnes,* 17 Mass. R. 365 ; *Granger* v. *Clark,* 9 Shepl. 128. This principle is fully established, where there is no fraud or collusion ; and the jury have found none to exist in this case. Even if there be some irregularity, which might furnish ground for reversal of the judgment on a proper application by a party to it, it is binding until reversed, and cannot be impeached collaterally. If some

of the expressions in the case, *Downs* v. *Fuller*, are to be taken in their broadest sense, and without reference to the case before the Court, they are opposed to all other decisions on the subject, and cannot be law. The language was used in reference to an alleged judgment, void on its face, and not voidable merely.

It is said that the attachment was dissolved by taking judgment for a larger amount than the *ad damnum* in the writ. The accruing interest on the notes, while the action was continued in Court, made the amount actually due, more than the *ad damnum*. No new cause of action was introduced. The only error was in not claiming all that became due. If an attempt should be made to procure a reversal of the judgment for this cause, it could' easily be defeated by a *remittitur* for the excess. That question, however, is not now before the Court.

It is said, that the execution is void, because it was issued for a greater sum, than the amount of the judgment. The fact is otherwise. The officer is directed to levy for the *aforesaid sums*, amounting to the judgment, precisely, and the figures in the margin are right; the only error is in one place in the reciting part. The true amount is twice inserted, and the untrue, but once. It was a mere clerical mistake, which could injure no one, as the officer was not authorized to collect or levy for more than the true sum.

The return of the officer, that the debtor had neglected and refused to appoint an appraiser, is as full as the statute. No form is prescribed, and a general return is sufficient. *Blanchard* v. *Brooks*, 12 Pick. 47 ; *Bugnon* v. *Howes*, 1 Shepl. 154.

It is enough, that the execution was returned into court before the trial. But if there had been an objection of this kind made in season, it would instantly have been put at rest by calling the clerk. A party cannot keep back such objections until the case is committed to the jury, and then make them. If this can be permitted, no objections will be made until that time.

The law, that notes may be filed under the money counts

and in support of them, is too well settled to require authorities for its support. When that suit was brought, there was no law in existence, requiring that the declaration should particularly specify the demand sued, in order to render the attachment valid.

The opinion of the court, WHITMAN C. J. dissenting, on the ground, that an attachment made on a writ containing only the general money counts, although made prior to the st. 1838, c. 344, could not be valid, was drawn up by

SHEPLEY J. — The demandant caused an attachment of the premises demanded, to be made on a writ in his favor against Benjamin Dillingham, on November 29, 1837 ; obtained judgment, and within thirty days thereafter caused an execution issued thereon to be levied on the premises on November 14, 1840.

The tenant claims the premises by virtue of a conveyance thereof made by Benjamin Dillingham to him, on January 10, 1838. He introduced also a mortgage of the premises made by Benjamin to Thomas Dillingham on February 27, 1828. It appeared from testimony introduced by the tenant, that Thomas Dillingham died intestate soon after that mortgage deed was executed : that no letters of administration upon his estate had been granted ; that he left surviving children some of whom were under age ; that no guardian had been appointed for them ; that there remained due upon that mortgage, on April 16, 1838, about one hundred dollars, which was then paid by the tenant to Ajalon Dillingham, who received it for the heirs at law of Thomas Dillingham, and paid it to them, and who assumed to act as guardian for those under age and to make an assignment or conveyance of their interest in the premises to the tenant. This conveyance so made without authority was properly rejected. The tenant also introduced a deed from Jonathan Chandler *et al.* to himself, bearing date on November 16, 1844, but it does not appear in the case, that the grantors had any title to the premises demanded.

Upon this exhibition of title the demandant was entitled to

recover, unless there was some fatal defect in his proceedings. The counsel for the tenant contended, that there were several fatal irregularities or defects in them, and requested, that instructions to that effect might be given to the jury.

1. The Court was requested, and refused, to instruct the jury that the " levy was invalid against the tenant, because there was a general count in said writ and no bill of particulars."

It appeared from testimony introduced by the tenant, that the writ was made at the request of Joseph Smith, who presented to the attorneys two promissory notes, made by Benjamin Dillingham payable to himself or order, and that he endorsed them in their office and directed a suit to be commenced upon them in the name of the demandant; and that the same notes were filed and were the only evidence introduced to obtain the judgment. The identity of the demands, upon which the suit was commenced, and of those, upon which the judgment was rendered, being thus established by the testimony of the tenant, the attachment cannot be considered as vacated by the introduction of any new or different demand. It was valid, unless originally void, simply, because the declaration contained only one general count for money had and received. Such a count is sufficient to enable a plaintiff by the common law to prove under it negotiable promissory notes made by the defendant and held by the plaintiff as endorsee. The statutes of this State, existing before the act of March 23, 1838, was approved, did not prescribe any particular form of declaration to be used in writs, upon which attachments of real estate were authorized to be made. The plaintiff was entitled to frame his declaration in any legal form. Of this right he could be deprived only by some statute provision. Having caused his writ and declaration to be made in a legal form, and an attachment to be made, and having recovered a judgment thereon in a legal manner, a creditor would be entitled to obtain payment from the estate so attached. No creditor or grantee of his debtor could defeat a prior right, thus secured to him, by alleging that to be irregular or invalid, which was in strict accordance with the rules of law then existing. Nor would any judicial

tribunal from a consideration, that such a declaration might be used to carry into effect unjust or fraudulent designs, be authorized to declare, that an attachment so made was invalid. The act of March 23, 1838, made an important change in the existing law respecting the form of the declaration in a writ to be used for the attachment of real estate. The first section provided, that the officer, who made an attachment of real estate, should file an attested copy of his return with the register of deeds, with the names of the parties, the date of the writ, the sums sued for, and the court, to which the writ was returnable. The fourth section provided, that the plaintiff should set out in his writ specifically the demand or claim, on which his action was founded, and that no other claim should be proved under the general counts. It is contended, that this provision was applicable to suits then pending. Such a construction cannot be admitted. The provisions of the first section are limited by the words used to cases in which real estate "shall hereafter be attached." The provisions of the fourth section are made applicable only to the attachments named in the first section by these words, it shall be " necessary to the validity of the attachment made as aforesaid." The inference from this language is clear, that it was not deemed necessary to the validity of attachments not made as aforesaid, that the plaintiff should set out in his writ specifically the demand, on which his action was founded. The case of *Fairfield* v. *Baldwin*, 12 Pick. 388, has been referred to as deciding, that an attachment made upon a writ containing only the general money counts would not be valid. The case does not appear to authorize such a conclusion. The writ, which occasioned that decision, as first framed, contained two counts only, one for $10,000 money had and received, the other for $5,000 for goods sold and delivered. The plaintiff, under leave to amend, filed nine new counts declaring particularly on notes, checks, and a balance of account, and obtained judgment on them. Among other facts it was proved, "that some of the notes and checks declared on in the new counts, and which were antedated, were given, after the commencement of the suit of Joseph

King, in exchange for notes and checks previously due to Joseph King and his partner, E. Davenport." When the remarks made in the opinion are considered with reference to the question then under consideration, as all general remarks should be, there does not appear to be any sufficient reason to conclude, that the court considered the attachment made on the writ in favor of Joseph King to be void *ab initio*, because the declaration contained only those general counts. The opinion commences with the observations. "If the prior attachment which was made by the defendant upon the writ of Joseph King against Cyrus King were vacated, the plaintiff's attachment would be the only one upon the property. Was the prior attachment vacated by the amendment introducing the new counts?" The question for decision is thus clearly stated. No language is found in the opinion declaring, that the attachment was void *ab initio*, or that such a question was considered or decided. On the contrary the opinion explicitly states what was decided by the court, by the use of the following language. "We are all clearly of opinion, that for the reasons before stated, the attachment, which was made for Joseph King prior to that, which was made for the plaintiff, was vacated." After such a declaration it is difficult to perceive the ground, upon which it can be contended, that the attachment was held to be originally void.

2. The Court was requested, and refused to instruct the jury, that the levy was invalid, because judgment was rendered for an amount larger than the sum named in the *ad-damnum* clause of the writ.

The judgment may for that cause be liable, upon error brought by the party against whom it was rendered, to be reversed in whole or in part. *Grosvenor* v. *Danforth*, 16 Mass. R. 74. It is a valid judgment until reversed. A stranger to it can neither sustain a writ of error nor take advantage of the irregularity.

3. The next request refused was, that the levy was invalid, because the execution did not correspond with the judgment, and did not appear to have been issued upon it. The judgment

was rendered for the sum of $4174,37, damage, and for $31,87 costs. The execution recited the recovery of a judgment between the same parties, at the same term of the same Court, for the sum of $4774,37, damage, and for $37,87, costs. It also commanded the officer to cause to be satisfied "the aforesaid sums, being four thousand two hundred and six dollars and twenty-four cents." This last amount exactly corresponded to the amount of the judgment recovered for damages and costs ; and the true sums so recovered were also stated in figures upon the margin of the execution. It was very apparent, that there was a clerical error in reciting the amount of the judgment recovered. Such an error is amendable. *Atkins* v. *Sawyer*, 1 Pick. 351. Courts will not reverse judgments upon error brought for such clerical errors, but will allow or direct an amendment. *Moore* v. *Tracy*, 7 Wend. 229.

4. A request was made for instructions, that the debtor was not duly notified to choose an appraiser. The officer in his return states, "the debtor within named having been duly notified to choose one, but having neglected and refused to choose." It has been decided, that an officer's return, stating that the debtor neglected to choose an appraiser, was sufficient, there being a necessary implication, that he was notified. *Bugnon* v. *Howes*, 13 Maine R. 154. In this case the officer states that, which has been uniformly regarded as sufficient.

5. A request was made for instructions, that the appraisers did not appear to have been legally sworn. The documents exhibited a certificate made on the back of the execution by Thomas B. Little, justice of the peace, that he had administered the proper oath to the appraisers, who in their return upon the execution refer to it as "having been sworn as above." The officer in his return names the appraisers and states, that he caused them "to be chosen and sworn" "faithfully and impartially to appraise the estate above described." He does not refer to the certificate made by the justice, or to the return made by the appraisers. In the case of *Chamberlain* v.

*Doty*, 18 Pick. 495, relied upon by the counsel for the tenant, there was no certificate of the magistrate indorsed upon the execution, showing that the appraisers had been sworn, and there was no reference to one in the return signed by the officer, or by the appraisers. Those returns only stated that the appraisers had been duly sworn. While the Court decided, that such returns were insufficient, it remarked, that Courts had gone very far in considering the certificates of magistrates and of appraisers indorsed upon the execution, in connexion with officer's returns, as aiding any defects in the returns themselves. In the case of *Williams* v. *Amory*, 14 Mass. R. 20, the return of an officer stating " they being duly sworn faithfully and impartially to appraise the same" was held sufficient. In the case of *Bamford* v. *Melvin*, 7 Greenl. 14, the exact language used by the officer is not stated. The opinion of the Court only states, that the officer certified that they were sworn, and that was held sufficient. In the present case the certificate of the magistrate and the returns being made upon the back of the execution show, that the appraisers were legally sworn.

6. The bill of exceptions states, that there was no proof, that the execution had been returned to the clerk's office, after the levy was made, except what appeared from the papers themselves ; that this objection was not taken, until after the arguments and the charge to the jury ; and that it was overruled. If objections might be first interposed and points be first made at such a stage of the proceedings, the opposite counsel would be deprived of an opportunity to obviate or to comment upon them ; and the Court, after its duties were closed, would be required to open the proceedings again for the consideration and presentation of new matter. Such a practice, depriving one party of his right to be heard in argument to the jury upon every question made in the cause, and introducing great irregularities ill suited to an impartial and fair administration of justice, is inadmissible ; and the objection first made at that time was properly disregarded.

7. The tenant contended, that there was nothing due from Benjamin Dillingham to the demandant; and he was permitted to introduce Dillingham as a witness to prove the circumstances, under which that judgment was recovered against him. The jury were instructed, that he could not in this action "go into the inquiry of what amount was really due, or whether any thing or not, unless that judgment was collusively obtained." Collusion implies fraud. The recovery of judgment against Dillingham was a fact to be proved by the demandant to establish his title. The proof was to be made by a duly authenticated copy of it. If a stranger to that judgment might destroy a title derived under it, by the introduction of evidence proving, that the debtor did not owe the creditor, the result might be, that after a creditor by severe litigation had obtained a judgment against his debtor, he could not rest upon that judgment as conclusive, but must be prepared to enter into the same litigation anew, with any third person having no other interest in the question, than a claim of title to the estate levied upon to satisfy that judgment. And if the course pursued in this case were to be justified, he must do so with the great disadvantage of having his debtor become a witness against him to destroy the effect of that judgment. It requires no argument to prove, that such a course would be alike erroneous in principle and mischievous in practice. This Court has decided, that a judgment cannot be thus impeached collaterally, unless collusively or fraudulently obtained. *Banister* v. *Higginson*, 15 Maine R. 73; *Granger* v. *Clark*, 22 Maine R. 128.

The grounds, upon which a judgment might become inoperative against one interested in the title to land levied upon, were stated in the case of *Miller* v. *Miller*, 23 Maine R. 22. They were, that "the grantee might be allowed to show, that it was obtained by fraud, or that the cause of action accrued under circumstances, which would not give the creditor a right to impeach the conveyance."

The case of *Downs* v. *Fuller*, 2 Metc. 135, states that a judgment recovered by fraud or collusion may be impeached

by a stranger to it; and it decides, that "where a judgment is recovered contrary to law and prejudicial to a third party, he should have a right to avoid it." The attempt in this case was not to show, that the judgment was illegally recovered, but to show, that a judgment was legally recovered upon demands, which were not justly due. That was a matter to be finally settled between the creditor and debtor.

*Exceptions overruled.*