DERBY (EVERETT v.). See Case No. 4,-
576.

## Case No. 3,817.
### DERBY v. JACQUES et al.
[1 Cliff. 425.][1]

Circuit Court, D. Massachusetts. Oct. Term.
1860.

RES JUDICATA — PLEA IN BAR — NONSUIT AS BAR
—JUDGMENT ON AGREED STATEMENT—WRIT OF
RIGHT—STATE LAWS.

1. A plea which sets forth proceedings in a
former suit and a judgment in favor of the ten-
ants, with profert of the record, and also states
that the demandant, subsequent to the rendi-
tion of the judgment, made application to the
court to amend the record by entering judgment
for the tenants as upon a nonsuit, which appli-
cation the court heard and refused, is not double;
and that part of the plea which states the ap-
plication being entirely immaterial, and not in
any possible view affecting the question whether
the judgment was or was not a bar (the record
being wholly unaffected by the application),
may be rejected as surplusage.

2. A judgment of nonsuit even upon an agreed
statement of facts cannot be pleaded in bar to
a new suit, although rendered by a court of
competent jurisdiction, between the same par-
ties, and for the same subject-matter, as in the
second suit.

3. An agreed statement may be the proper
foundation of such a judgment as will constitute
a bar to a new suit between the same parties
for the same cause of action. Judgments upon
agreed statements of facts were unknown to the
common law, but the general usage of the courts
of Massachusetts has sanctioned this mode of
trial, and it has become part of the common
law of the state.

4. Where a cause was submitted to the court
under an agreed statement which among other
things provided that "the court may make any
other order or judgment in the case which they
shall think it may require," held, that the whole
controversy was submitted to the court without
limitation; and that, the court having jurisdic-
tion of the cause and of the parties, its judg-
ment, until reversed, must be binding in every
other court.

5. By the 34th section of the judiciary act [1
Stat. 92] it is provided that the laws of the
several states, except in certain cases, shall be
regarded as rules of decision in the courts of
the United States in cases where they apply.

6. While a writ of right may still be main-
tained in the circuit court for the district of
Massachusetts, the common-law rule that a
final judgment in a writ of entry is not a bar to
such a suit is no longer in force in this district.
Certainly not if such judgment was recovered in
the state court since the writ of right was abol-
ished by the statute of the state.

[Cited in Kelly v. Town of Milan, 21 Fed.
862.]

This was a writ of right, claiming to re-
cover an undivided fifth part of a certain
parcel of land in Somerville, in this district.
Two pleas were filed by the tenants [Samuel
Jacques, and others]: First, they pleaded
the general issue, or rather tendered an issue
on a joinder of the mise, on the mere right
of the demandant [Eleanor Derby] and her
seizin, with the usual prayer that recogni-
tion be made whether they or the demand-

[1 [Reported by William Henry Clifford, Esq.,
and here reprinted by permission.]

ant have the greater right to hold the prem-
ises, and also praying for an inquiry as to
the seizin of the demandant. By their sec-
ond plea, the tenants set up as a bar to the
action a judgment of the supreme court of
Massachusetts, rendered in a suit brought by
the demandant and certain other parties
against Henry Hall and Samuel Jacques, the
father of the tenants, who had subsequently
deceased. In that case, the record showed
that the parties made an agreed statement
of facts, setting out the evidences of their
respective titles, and submitted the cause to
the court upon that agreed statement, which,
as the plea alleges, concludes as follows: "If
the court shall be of opinion, on the facts
stated, that the demandants have no right to
any part of the demanded premises, they are
to become nonsuit, and judgment is to be
entered for the tenants. If the court shall
be of opinion that the title to the whole of
the demanded premises is in the demandants,
the tenants are to be defaulted, and judg-
ment is to be entered accordingly. If the
court shall be of opinion that the papers
show a legal title in the demandants, but
under the circumstances the tenants might,
in law, have acquired an exclusive adverse
possession of any part of the demanded prem-
ises, under a claim of title for more than
twenty years, so as to gain a title thereto,
then the court may refer it to three commis-
sioners, with such instructions as the court
may see fit, to determine to what, if any,
part of the demanded premises the tenants
have acquired a title by an adverse posses-
sion of more than twenty years, and the re-
turn of such commissioners shall be conclu-
sive between the parties, and judgment be
entered accordingly, or the court may make
any other order or judgment in the case
which they may think it shall require."
After reciting the agreement of the parties,
the tenants by their plea allege in substance
and effect that the court afterwards, at a
regular term thereof, filed a rescript in the
case as follows: "Judgment for the ten-
ants." Whereupon it was considered by the
court that the tenants recover against the
demandant their costs, taxed at a given
sum, as by the record and proceedings there-
of in the court more fully and at large ap-
pears. Subsequently the demandants, as the
plea stated, made application to the court
to alter the record by having an entry of
nonsuit made therein, and a judgment for
the tenants as upon nonsuit, which applica-
tion was heard by the court, and, after due
consideration, was refused. Hall, the first-
named tenant in the suit described in the
plea, conveyed all his right and estate in the
demanded premises to the father of the ten-
ants in this suit, who subsequently deceased,
leaving a will, and eight children, and the
tenants claimed title to the premises in ques-
tion as his heirs and devisees, according to
the terms and conditions of the will. To
that plea the demandant demurred, and

showed the following causes of demurrer: First, that the judgment set up in the plea was a judgment for costs only, and did not fix or determine the right or title to the land demanded. Second, that the judgment was rendered on an agreed statement of facts signed by the parties, by which it was stipulated that, if the court should be of opinion that the demandants had no right to any part of the demanded premises, they were to become nonsuit, and judgment was to be entered for the tenants. Third, that the judgment for the tenants was in fact rendered upon a nonsuit. Fourth, that it is apparent from the judgment pleaded that there was no verdict of a jury, no issue joined either of law or fact, no retraxit of the demandants, and no other legal ground upon which the judgment could rest, except the agreement of the demandant, to become nonsuit. Fifth, that the plea was double, by alleging the proceedings of the court subsequent to the judgment, of which there is no record.

E. H. Derby and J. P. Robinson, for demandant.

The agreed statement of facts sets forth three propositions:—First, a judgment of nonsuit, if demandants showed no title. Second, a judgment for demandants on default, in case they showed a title. Third, a reference to commissioners in case the title was found in both parties, and thereupon such further order or judgment as the court shall deem the case to require; and our point is, that the demandants, having failed to show a title to the satisfaction of the court, have been nonsuited, and a judgment for costs has been entered on such nonsuit pursuant to the agreed statement of facts. The judgment in Derby et al. v. Hall et al. does not touch the title or allude thereto, but is a judgment for costs only. There was no issue in law or in fact between the parties, upon which a judgment to affect the title could be founded. In pursuance of the agreement of the parties, no judgment could be entered, except upon nonsuit or default. No judgment at all could be rendered in such case, except in pursuance of such agreement. The demandants never agreed to anything, except for a nonsuit, in case the legal title should be decided against them. There is no judgment whatever against them, except for costs, viz. "that defendants recover of the demandants their taxed costs." This court will not go behind the record, and that record must be presumed to show the intent of the parties. The words in the rescript or message of the court to the clerk in vacation, "Judgment for tenants," are merely preliminary to the judgment, and not the judgment or any part of the same. The rescript merely follows the agreed statement of facts, that, on failure to show title, "demandants are to become nonsuit, and judgment to be entered for tenants." And the judgment of nonsuit in the usual form has been entered for the tenants accordingly. The established form of a judgment on a verdict in bar of the title of the demandants is one finding the title, viz. "that it is considered that demandants take nothing by their suit, and that the tenants go thereof without day," while in a writ of right, the judgment for tenants is that "the tenants shall hold the demanded premises quit of the said demandants and their heirs forever, and shall recover their costs." The plea is double and defective in form, and introduces matter which, if recorded, would not affect the decision, but, on the contrary, would aid the demurrer. That a full judgment in a state court upon a writ of entry is no bar to a writ of right in the United States courts, which is a higher remedy. Counsel further contended, that as there were but four kinds of judgments known to the law, viz. on demurrer, verdict, retraxit, and nonsuit, and as this judgment was not either of the first three, it must be the last.

S. E. Sewall, for tenants.

It is too well settled to be disputed, that a judgment between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive. Le Guen v. Gouverneur, 1 Johns. Cas. 436; 1 Greenl. Ev. §§ 528, 531. The question, then, is, What was the judgment of the supreme court of Massachusetts? The rescript sent to the clerk was in these words, "Judgment for tenants," and so it was recorded by the clerk. Demandant contends that this was not a judgment, but a mere order to the clerk to enter judgment. But this is an entirely false view of the case. The clerk is merely a ministerial officer, who records the doings of the court. The judgment is itself the act of the court, not of the clerk. The rescript is the judgment, the ipsissima verba of the rescript. The clerk did not venture to alter them. The record is the mere evidence of the judgment, not the judgment itself. When the clerk recorded the rescript he recorded the judgment. The judgment of the court is often verbal, as in sentencing prisoners to death, fine, or imprisonment. The words addressed by the court to the prisoner are the judgment; what the clerk writes is the mere record of the judgment. Demandant asserts that only four judgments are known to the law; now, besides his list, there is, in the practice of Massachusetts, a very familiar one, viz. on an agreed statement, which is this very case. Now it does not matter whether the judgment follows the terms of the agreed statement or not. If it be in direct violation of them, it will yet be valid until reversed.

CLIFFORD, Circuit Justice. Three questions are raised by the demurrer for the con-

sideration of the court. But for the sake of convenience, the order in which they are presented in the pleadings will be reversed. They are as follows: (1) Whether the plea is sufficient in point of form; and if so, then, (2) whether the record of the former suit and judgment set forth in the plea is of a character to operate as a final and conclusive determination of the title of the parties in the court of the state where it was made; and if both of these questions are found in favor of the tenants, then, (3) whether a judgment upon the merits rendered in this state, by a court having jurisdiction of the parties and the cause, in a plea of land, commenced and prosecuted by a writ of entry, is a bar to a writ of right subsequently prosecuted between the same parties, and for the same premises, in the federal courts.

It is insisted by the demandant that the plea is double, and therefore bad in point of form, because it sets forth the proceedings in the court on the application of the demandant to amend the record, which proceedings took place subsequent to the rendition of the judgment, and are no part of the same. That suggestion would certainly have weight, if those allegations of the plea were necessary to maintain the defence set up by the tenants; and it would clearly be well founded, under the circumstances of this case, if the other matters set forth in the plea did not remain in full force, and wholly unaffected by those allegations. But it is obvious, if the judgment without those proceedings is of a character to operate as a final and conclusive determination of the title of the parties, then those proceedings are entirely immaterial to the issue of law raised by the demurrer; and if the judgment was not of such a character at the time the record of the judgment was made, still those proceedings are equally immaterial, because the record yet remains without any alteration whatever; so that the question whether the payment is or is not a bar to this suit, in any view that can be taken of the question, is wholly unaffected by those proceedings. According to the well-settled rules of pleading, therefore, the allegations of the plea setting forth those proceedings, which in themselves are entirely immaterial, may be rejected as surplusage; and if the other matters set forth in the plea are well pleaded, and constitute a sufficient answer to the declaration, the allegations setting forth those proceedings do not vitiate the plea. Examples may be found where the immaterial averment is descriptive of the matter in controversy, or where the immaterial matter is so interwoven with the substance of the plea that the whole allegation becomes material and is subject to a traverse; but the present case falls within the well-known rule, that if the matter unnecessarily stated be wholly foreign and irrelevant to the cause, so that no allegation on the subject whatever was necessary, it may be rejected as surplusage, and need not be proved; nor will it vitiate even on a special demurrer. 1 Chit. Pl. (12th Am. Ed.) 229; Steph. Pl. 423; Co. Litt. 303b.

In the second place, it is insisted by the demandant that a judgment of nonsuit is never a bar to a new suit, and that the judgment set forth in the plea is a judgment of nonsuit. That proposition, being twofold, presents two questions which will be separately considered. While the tenants do not controvert the first branch of the proposition, they expressly deny that the judgment in question is one of nonsuit, or that it was so intended or understood by the court before whom it was rendered. Nonsuit at common law was a mere default or neglect of the plaintiff to pursue his remedy, and therefore he was allowed to begin his suit again upon payment of costs. 3 Shars. Bl. 296. Courts of justice could determine nothing at common law, unless both parties were present in person or by their attorneys, except in cases of default. In the course of the pleading, therefore, if either party neglected to put in his declaration, plea, replication, or the like, within the times allotted by the rules of the court, the plaintiff, if the omission was his, was said to be nonsuit; or if the negligence was on the side of the defendant, judgment was rendered against him for his default. Such a judgment, when rendered against the plaintiff, was only for the costs of the suit, and upon the payment of the same he might bring a new action. Those rules of practice substantially obtain at the present time, and accordingly it has been determined by the highest authority that a judgment of nonsuit, even upon an agreed statement of facts, cannot be pleaded in bar to a new suit, although it was rendered by a court of competent jurisdiction, and was between the same parties and for the same subject-matter. Homer v. Brown, 16 How. [57 U. S.] 354; Morgan v. Bliss, 2 Mass. 113; Knox v. Waldoborough, 5 Me. 185; Bridge v. Sumner, 1 Pick. 371; Wade v. Howard, 8 Pick. 353. These cases fully justify the first branch of the proposition assumed by the demandant; but it by no means follows, as will presently appear, that all of the deductions attempted to be made from the admission can be sustained. Assuming that a judgment of nonsuit is not a bar to a new action, the more important inquiry arises in the case, what is the true nature of the judgment set up in the plea. To show that it is a judgment of nonsuit, and nothing more, the attention of the court is drawn by the counsel of the demandant to the various kinds of judgment as known and understood at common law. He assumes, in the language of a learned commentator, that the judgment of the court is the sentence of the law, and that there can be but four kinds of judgment in cases of this

description. (1) Upon demurrer, where the facts are agreed by the parties, and the law is determined by the court. (2) Where the law is admitted by the parties, and the facts are disputed, as in case of judgments on verdicts. (3) Where the facts and law arising thereon are admitted by the defendant, as in judgments by confession or default. (4) Where the plaintiff is convinced that the facts, or the law, or both, are not sufficient to support his action, as in judgments on nonsuit, retraxit, and discontinuance. 3 Shars. Bl. 395. That course of remark, however, is based upon the assumption that the practice in the courts of Massachusetts is the same in all respects as the practice was at common law; and inasmuch as a final judgment on an agreed statement of facts was unknown in the early jurisprudence of the parent country, so it is insisted that such an agreed statement cannot now be regarded as the proper foundation of such a judgment as will conclusively determine the rights of the parties and constitute a bar to a new suit. Much reason exists to suppose that such was the theory of the common law. General verdicts, however, were often taken subject to the opinion of the court on a special case stated by the counsel; but as nothing appeared on the record except the general verdict. the parties were precluded from the benefit of a writ of error. Id. 377. At one time strong doubts were entertained whether a writ of error would lie in the supreme court on a judgment rendered in the circuit court upon an agreed case. Keene v. Whittaker, 13 Pet. [38 U. S.] 459. Those doubts, however, were soon removed when, upon an examination of the question, it was found that the practice of the court had been to sustain writs of error in such cases almost from the time of its organization. Faw v. Roberdeau's Ex'r, 3 Cranch [7 U. S.] 173; Tucker v. Oxley. 5 Cranch [9 U. S.] 34; Kennedy v. Brent, 6 Cranch [10 U. S.] 187; Brent v. Chapman. 5 Cranch [9 U. S.] 358; Shankland v. Washington Corp., 5 Pet. [30 U. S.] 390; Inglee v. Coolidge, 2 Wheat. [15 U. S.] 363; Miller v. Nicholls, 4 Wheat. [17 U. S.] 311. Three cases have since been reported, in which the point has been directly adjudicated, so that the question may now be considered as closed. U. S. v. Eliason, 16 Pet. [41 U. S.] 301; Stimpson v. Baltimore & S. R. Co., 10 How. [51 U. S.] 329; Graham v. Bayne, 18 How. [59 U. S.] 60; Suydam v. Williamson, 20 How. [61 U. S.] 427. General usage in the courts of Massachusetts, "whereof the memory of man runneth not to the contrary," has sanctioned this mode of trial until it has become a part of the common law of the state. Cases are often submitted to the court in that mode, without any other pleading than the declaration. Issues are seldom or never framed in such submissions, except so far as they arise out of the statement of the case. When the practice was commenced is not known, and in all probability

it would be as vain as it would be useless to attempt to trace its origin. Four cases at least where the trial was in that mode, are reported in the first volume of the Massachusetts Reports. They were all conducted by eminent counsel, and were severally heard and decided by a learned court. Livermore v. Newburyport Ins. Co., 1 Mass. 264; Payson v. Payson, Id. 284; Gordon v. Pearson, Id. 324; Porter v. Bussey, Id. 436. No one can read any one of those cases and fail to see that the practice as now known and universally understood was at that early period equally familiar to the bar and the court. From the year 1804 to the present time, the practice of trying causes in that mode has constantly increased, and it was never doubted, so far as appears. that a judgment rendered on such a foundation. if purporting in its terms to be a final judgment. was a conclusive determination of the matter in controversy, and as such that it might be pleaded in a bar to a new suit between the same parties for the same cause of action. Maine at that period was a part of Massachusetts, but since the act of separation, her courts have adopted and sanctioned the same practice. which has been continued to the present time. Hubbard v. Cummings, 1 Me. 11; Fosdick v. Gooding, Id. 30; Lincoln & K. Bank v. Richardson, Id. 79; Hallowell v. Gardiner, Id. 93; Jewett v. Somerset Co., Id. 125. To admit that there can be a doubt upon this question, would be to prejudice vast interests long since supposed to rest upon the irrepealable determinations of the courts. There is no ground for doubt upon the subject, any more than in respect to a judgment on the verdict of a jury. Having come to this conclusion, it now becomes necessary to examine the agreement under which the cause was submitted to the determination of the court. Such agreements are usually appended to the statement in the case, and in fact form a necessary part of it. Livermore v. Newburyport Ins. Co., 1 Mass. 269. In the first place, the plea states that. the parties appeared at regular term of the court, and agreed to submit the action to the decision of the court, on the following statement of facts: That agreement recites the nature of the action, describes in general terms the land in controversy, and contains a full statement of the evidence of title on which each party relied. By the terms of the agreement it was stipulated: (1) That if the court came to the conclusion, on the facts stated, that the demandants had no right to any part of the demanded premises, then the demandants were to become nonsuit, and judgment was to be entered for the tenants. (2) On the other hand, if the court, in view of the facts, came to the conclusion that the title to the whole of the premises in question was in the demandants, then the tenants were to be defaulted, and judgment was to be entered accordingly. (3) But if the circumstances were such, in

the opinion of the court, that the tenants might have acquired title to any portion of the demanded premises by adverse possession, then, although the paper evidence showed the title to be in the demandants, still the court was authorized to refer the matter to three commissioners, with such instructions as the court might see fit to give in order that the commissioners might determine to what, if any, part of the same premises the tenants had acquired a title by such adverse possession; but it was expressly stipulated that the return of the commissioners should be conclusive between the parties, and that judgment should be entered accordingly. Under each of the three clauses of the agreement already recited, the parties themselves prescribed the judgment which the court should enter in the case. No discretion whatever was vested in the court as to the judgment to be rendered under any one of those three clauses of the agreement. Demandants were to be nonsuited under the first clause, and the tenants were to be defaulted under the second, and judgment was to be rendered on the return of the commissioners under the third clause. Nothing, therefore, can be plainer than the fact that the court, in giving the judgment in question, did not act under any one of those three clauses. It is not pretended that the demandants were ever nonsuited, or that the tenants were defaulted, or that the cause was ever referred to commissioners. Were there no other clause in the agreement, it would then be clear that the judgment was erroneous. Such, however, is not the fact, as appears from the fourth clause of the agreement, which provides as follows: "Or the court may make any other order or judgment in the case which they shall think it may require." Under this last clause, the whole controversy was submitted to the court on the facts stated, without restriction or limitation. To suppose otherwise would be to do violence to the language employed, and to make a new agreement for the parties instead of expounding the one they have made for themselves. It is suggested, however, that the fourth clause was intended to apply only to the special proceeding contemplated under the third, and that it should be so limited and qualified. But that suggestion cannot be sustained, for the reason that the third clause is as independent, full, and complete as the first and second; and also, for the better reason, that it expressly provides that "the return of the commissioners shall be conclusive between the parties, and judgment be entered accordingly." Admitting this construction of the agreement to be correct, it then follows that it was entirely competent for the court to render judgment for the tenants, or judgment for the demandants, accordingly as they found for the one or the other party; and such a judgment, undoubtedly, if properly entered, would be a conclusive determination of the matter in controversy in the courts of this state. Assuming that the court had power to render a final judgment for the tenants, the next inquiry is, Was the judgment which they rendered one of that character? It is contended by the demandant that it is a judgment for costs only. No question is made as to the facts stated in the plea, but the argument on this point is addressed to the construction of the language employed by the court in giving the judgment, and the argument is, that the language so employed, when taken in connection with the agreement under which the court acted, shows that the judgment is one for costs only, which impliedly admits that the language is correctly recited in the plea. Had there been any doubt as to the correctness of that part of the plea which recites the judgment, it should have been controverted by a proper replication. Under the admissions of the demurrer, it must be assumed that the judgment as recorded is a judgment for the tenants, in the manner and form as stated in the plea. Taking that for granted, I am of the opinion that the judgment is in legal effect precisely what it purports to be,—a final judgment for the tenants. Clearly it is not a judgment of nonsuit, and therefore was not rendered under the first clause of the agreement; and it is equally clear that it could not have been rendered under the second clause, because it is a judgment for the tenants, and not for the demandants. All agree that the third clause was inapplicable to the case, and that no such judgment as is therein contemplated could have been entered by the court, because the case was never referred to commissioners. It comes to this, then, either that the court acted under the fourth clause or they acted without authority. For the argument's sake, however, let it be admitted that the construction here given to the fourth clause is not correct, and that the judgment is erroneous. Still, it is a final judgment of a court having jurisdiction of the cause and of the parties, and in the opinion of this court its validity cannot here be questioned. Where a court has such jurisdiction, it has a right to decide every question that arises in the cause; and whether the decision be correct or not, the judgment, until reversed, must be regarded as binding in every other court. Errors and irregularities, if any, must be corrected by some direct proceeding to set the judgment aside, either before the same court or in an appellate court. Elliot v. Peirsol, 1 Pet. [26 U. S.] 340; Thompson v. Tolmie, 2 Pet. [27 U. S.] 168; Cook v. Darling, 18 Pick. 393; Granger v. Clark, 22 Me. 128; Smith v. Keen, 26 Me. 423; Banister v. Higginson, 15 Me. 73; Simms v. Slacum, 3 Cranch [7 U. S.] 306; Voorhees v. Bank of U. S., 10 Pet. [35 U. S.] 478. Lastly, it is insisted by the demandant that the judgment set up in the plea is not a bar to this suit, because it was rendered in a plea of land commenced and pros-

ecuted by a writ of entry. Beyond question the writ of right is in its nature the highest writ in the law. It lies only for the recovery of an estate in fee simple, and is the last resort of a party who has been ousted of real property. This writ, says Judge Blackstone, lies concurrently with all other real actions in which an estate of fee simple may be recovered, and it also lies after them, being as it were an appeal to the mere right when judgment hath been had as to the possession in an inferior possessory action. 3 Shars. Bl. 193; Jack. Real Act. 276; Stearns, Real Act. 350. Such a remedy still exists at common law, and it existed in the courts of Massachusetts until 1840, when it was abolished by statute. Rev. St. Mass. c. 101, § 51. A writ of right was a proper remedy in the courts of Massachusetts, as at common law, prior to that period; and it was held by the supreme court, in the case of Homer v. Brown, 16 How. [57 U. S.] 363, that the repeal of the statute conferring the remedy did not repeal it as process in the circuit court for this district. But the same court held, in the same case, that it was as process alone that it continued in the circuit court for this district, and that the action was subject to the limitation prescribed by the state law as to the time within which such a remedy may be prosecuted. Writs of right were abolished in Massachusetts before the rendition of the judgment set up in the plea of the tenants. When that judgment was rendered, therefore, the writ of entry was the highest writ known to the law of the state, and the judgment in question conclusively settled the title of the parties under the law of the state, so that the question here presented is not one respecting the form of the remedy, but presents the inquiry whether there can be one rule of property in the courts of the state, and another and a different rule touching the same subject-matter in the circuit court for the district. By the thirty-fourth section of the judiciary act, it is provided that the laws of the several states, except in certain cases not material to the present inquiry, shall be regarded as rules of decision in the courts of the United States in cases where they apply. Repeated decisions of the supreme court have established the doctrine that the federal courts adopt the local law of real property as ascertained by the decisions of the state courts, whether those decisions are grounded on the construction of the statutes of the state, or form a part of the unwritten law of the state, which has become a fixed rule of property. Jackson v. Chew, 12 Wheat. [25 U. S.] 153; Henderson v. Griffin, 5 Pet. [30 U. S.] 151; Daly v. James, 8 Wheat. [21 U. S.] 495; Lane v. Vick, 3 How. [44 U. S.] 464. While, therefore, a writ of right may still be maintained in the circuit court for this district, the common-law rule that a final judgment in a writ of entry is not a bar to such a suit is no longer here in force; certainly not, if such judgment was

recovered in the state court since the writ of right was abolished by the statute of the state. To regard the writ of right in the circuit court of the district as still overriding a final judgment recovered on a writ of entry in the state court, would present the anomaly of one rule of property in the state courts, and another and a different rule in the circuit court in respect to the same subject-matter. Infinite mischief would ensue from such a contrariety in the rules of property in the respective jurisdictions; and it was to prevent such a state of things that the thirty-fourth section of the judiciary act was passed. That section does not apply to process, it merely furnishes a rule of decision, and was not intended to regulate the remedy. M'Keen v. Delancy, 5 Cranch [9 U. S.] 22; Wayman v. Southard, 10 Wheat. [23 U. S.] 1; Polk's Lessee v. Wendall, 9 Cranch [13 U. S.] 87; Mutual Assur. Soc. v. Watts, 1 Wheat. [14 U. S.] 279; Shipp v. Miller, 2 Wheat. [15 U. S.] 316; Thatcher v. Powell, 6 Wheat. [19 U. S.] 119; M'Cluny v. Silliman, 3 Pet. [28 U. S.] 270; Green v. Neal, 6 Pet. [31 U. S.] 291. In view of the whole case, I am of the opinion that the plea of the tenants is sufficient, and constitutes a bar to the present suit. Demurrer overruled. Plea adjudged sufficient.

---

DERBY (PULTE v.). See Case No. 11,465.

DERBY (STORY v.). See Case No. 13,496.

DERBY (WALKER v.). See Case No. 17,068.

DERMOTT (FIDELIO v.). See Case No. 4,754.